Jeffrey A. Long, OSB No. 862350 (Lead Counsel)
4248 Galewood St., Suite 18
Lake Oswego, OR 97035
Telephone: (503) 374-9777
Facsimile: (503) 765-5544
E-mail:jefflonglawyer@gmail.com
*Lead Counsel for Plaintiffs Don McCoy and Maximiliano Olivera*

Marc E. Dann (Ohio Bar No. 0039425)
mdann@dannlaw.com
notices@dannlaw.com
DANNLAW
P.O. Box 6031040
Cleveland, OH 44103
Telephone: (216) 373-0539
*Co-Counsel for Plaintiffs Don McCoy and Maximiliano Olivera*

Thomas A. Zimmerman, Jr. (*pro hac vice* anticipated)
tom@attorneyzim.com
Matthew C. De Re (*pro hac vice* anticipated)
matt@attorneyzim.com
ZIMMERMAN LAW OFFICES, P.C.
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
Telephone: (312) 440-0020
*Co-Counsel for Plaintiffs Don McCoy and Maximiliano Olivera*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## MEDFORD DIVISION

| | |
|---|---|
| **DONALD E. MCCOY III** and **MAXIMILIANO OLIVERA**, individually, and on behalf of all others similarly situated, | Case No. |
| Plaintiffs, | **CLASS ACTION ALLEGATION COMPLAINT** |
| v. | **RESPA Action** |
| **WELLS FARGO BANK, N.A.** | **12 U.S.C. § 2601** *et seq.* |
| Defendant. | **DEMAND FOR JURY TRIAL** |

Plaintiffs Don McCoy and Maximiliano Olivera (collectively, "Plaintiffs"), individually, and on behalf of all others similarly situated, by and through counsel, bring this action against Defendant Wells Fargo Bank, N.A. ("Wells Fargo" or "Defendant"), and for their Class Action Complaint state as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Don McCoy ("McCoy") is a natural person residing in Jackson County, Oregon.

2.      Plaintiff Maximiliano Olivera ("Olivera") is a natural person residing in Monmouth County, New Jersey.

3.      Defendant Wells Fargo Bank, N.A. ("Defendant" or "Wells Fargo") is a federal depository institution incorporated under the laws of the State of Delaware, and, upon belief, maintains its principal place of business at 101 N. Phillips Ave., Sioux Falls, SD 57104.

4.      Wells Fargo does business in the state of Oregon and is licensed to do business in the state of Oregon as a foreign corporation.

5.       This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 as this action arises under the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq*. ("RESPA").

6.      Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## RESPA AND REGULATION X

7.      RESPA—codified as 12 U.S.C. §§ 2601, *et seq*.—permits a borrower (or an agent of a borrower) to submit a "qualified written request" ("QWR") to the servicer of the borrower's

"federally related mortgage loan."[1] 12 U.S.C. § 2605(e)(1)(B). In sending a QWR to a servicer, a borrower can either request information from the servicer,[2] or assert that the borrower's account is in error.[3] 12 U.S.C. § 2605(e)(1)(B)(ii).

8.    RESPA provides that upon receipt of a qualified written request "a servicer of a federally related mortgage loan…shall provide a written response acknowledging receipt of the correspondence within 5 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period." 12 U.S.C. § 2605(e)(1)(A).

9.    Regarding NOEs, RESPA provides that "not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request…the servicer shall…make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction" or, after conducting an investigation, "provide the borrower with a written explanation or clarification that includes…a statement of the reasons for which the servicer believes the account of the borrower is correct" either of which such notice "shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower." 12 U.S.C. §§ 2605(e)(2)(A)-(B).

10.    Regarding RFIs, RESPA provides that "not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request…the servicer shall…provide the borrower with a written explanation or clarification that includes" the "information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and the name and

---

[1] Hereinafter, these "qualified written requests" shall be referred to as "QWRs."
[2] Hereinafter, this subset of "qualified written requests" shall be referred to as Requests for Information, or "RFIs."
[3] Hereinafter, this subset of "qualified written requests" shall be referred to as Notices of Error, or "NOEs."

telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower." 12 U.S.C. § 2605(e)(2)(C).

11.    RESPA also requires servicers of federally related mortgage loans to respond to RFIs requesting the identity and contact information of the owner or assignee of borrowers' mortgage loans within ten (10) business days. 12 U.S.C. § 2605(k)(1)(D).

12.    In January 2013, the Consumer Finance Protection Bureau ("CFPB") issued a number of final rules concerning mortgage markets in the United States, pursuant to the authority granted by the Dodd-Frank Wall Street Reform and Consumer Protection Act—Public Law No. 111-203, 124 Stat. 1376 (2010)—which amended RESPA.

13.    The CFPB's RESPA Mortgage Servicing Final Rules—known as "Regulation X" and codified as 12 C.F.R. § 1024.1, *et seq.*—were issued on January 17, 2013, and became effective on January 10, 2014.

14.    Through Regulation X, the CFPB has provided guidance for the interpretation of certain RESPA provisions, including servicers' duties when responding to borrowers' QWRs, RFIs, and NOEs.

15.    Relative to RFIs, Regulation X provides that "a servicer shall comply with the requirements of this section for any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan." 12 C.F.R. § 1024.36(a).

16.    12 C.F.R. § 1024.36(d)(1) provides that a servicer must respond to an RFI by either "[p]roviding the borrower with the requested information and contact information, including a telephone number, for further assistance in writing" or "[c]onducting a reasonable

search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance."

17.     Notwithstanding the foregoing, Regulation X provides for certain exceptions to servicers' obligations to respond to RFIs. For example, 12 C.F.R. § 1024.36(f)(1) provides that a servicer does not have to comply with 12 C.F.R. § 1024.36(d) if the request seeks substantially the same information as a prior request, the information sought is confidential, proprietary, or privileged, the information is not directly related to the borrower's specific mortgage loan account, or the request is overbroad or unduly burdensome.

18.     If a servicer determines that it is exempted from responding to an RFI, pursuant to 12 C.F.R. § 1024.36(f)(1), Regulation X requires the servicer to "notify the borrower of its determination in writing not later than five days (excluding legal public holidays, Saturdays, and Sundays) after making such determination," setting forth the specific "basis under paragraph (f)(1) of this section upon which the servicer has made such determination." 12 C.F.R. § 1024.36(f)(2).

19.     Relative to NOEs, Regulation X provides that "[a] servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred…A qualified written request that asserts an error relating to the servicing of a mortgage loan is a notice of error for purposes of this section, and a servicer must comply with all requirements

applicable to a notice of error with respect to such qualified written request." 12 C.F.R. § 1024.35(a).

20.     12 C.F.R. § 1024.35(e)(1) provides that a servicer must respond to an NOE by either "[c]orrecting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a phone number, for further assistance" or "[c]onducting a reasonable investigation and providing the borrower with written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a phone number, for further assistance."

21.     Notwithstanding the foregoing, Regulation X provides for certain exceptions to servicers' obligations to respond to NOEs. For example, 12 C.F.R. § 1024.35(g)(1) provides that a servicer does not have to comply with 12 C.F.R. § 1024.35(e) if the NOE asserts an error that is substantially similar to an error that the servicer has previously adequately addressed, the NOE is so vague that the servicer cannot reasonably determine the specific error being asserted, or the servicer no longer services the loan, such that the NOE is untimely.

22.     If a servicer determines that it is exempted from responding to an NOE, pursuant to 12 C.F.R. § 1024.35(g)(1), Regulation X requires the servicer to "notify the borrower of its determination in writing not later than five days (excluding legal public holidays, Saturdays, and Sundays) after making such determination," setting forth the specific "basis under paragraph (g)(1) of this section upon which the servicer has made such determination." 12 C.F.R. § 1024.35(g)(2).

## STATEMENT OF FACTS

23.    Wells Fargo is a mortgage "servicer" as that term is defined by 12 C.F.R. § 1024.2(b) and 12 U.S.C. § 2605(i)(2). Wells Fargo is the current servicer of Plaintiffs' and Class (defined *infra*) members' notes, and mortgages on real property that secure those notes (collectively referred to hereinafter as the "loans").

24.    Plaintiffs' and Class members' loans are each a "federally related mortgage loan" as defined by RESPA and Regulation X. 12 U.S.C. § 2602(1); 12 C.F.R. § 1024.2(b).

25.    As such, Wells Fargo is subject to the requirements of RESPA and Regulation X, and does not qualify for the exception for "small servicers"—as defined by 12 C.F.R. § 1026.41(e)(4)—nor for the exemption for a "qualified lender"—as defined by 12 C.F.R. § 617.7000.

26.    Plaintiffs and Class members submitted one or more QWRs—as defined by 12 U.S.C. § 2605(e)(1)(B)—to Citizens. Plaintiffs' and Class members' QWRs were either RFIs— as defined by 12 C.F.R. § 1024.36(a)—or NOEs—as defined by 12 C.F.R. § 1024.35(a).

27.    Plaintiffs and Class members each submitted their QWRs (in the form of NOEs and/or RFIs) to Wells Fargo at the address Wells Fargo designated for receipt of NOEs and RFIs, pursuant to 12 C.F.R. § 1024.35(c) and 12 C.F.R. § 1024.36(d), respectively (the "Designated Address").

28.    In response to Plaintiffs' and Class members' QWRs, Wells Fargo replied with form letters stating that their "account[s] were in active litigation," and that as a result, Wells Fargo would not "be providing a response to [their QWRs] because the issues raised are the same or very closely related to the issues raised in the pending litigation" (the "Active Litigation Letters"). The Active Litigation Letters informed Plaintiffs and Class members that Wells Fargo

"forwarded [their] inquir[ies] to [its] litigation counsel to review during the pending litigation" and instructed Plaintiffs and Class members to contact Wells Fargo for further assistance. Wells Fargo did not otherwise make a substantive response to the borrowers' QWRs.

29.     Although 12 C.F.R. § 1024.35(g) and 12 C.F.R. § 1024.36(f) each set forth certain exceptions to Wells Fargo's requirement to respond to Plaintiffs' and Class members' NOEs and RFIs, respectively, there is no "active litigation" exception to Wells Fargo's obligation to respond to NOEs and RFIs under RESPA or Regulation X.[4]

30.     As such, Wells Fargo failed to provide adequate written responses to Plaintiffs' and Class members' QWRs, NOEs, and RFIs as required by 12 U.S.C. § 2605(e)(2), 12 C.F.R. § 1024.35(e), and 12 C.F.R. § 1024.36(d).

31.     Specifically, relative to Plaintiffs and members of the Class who submitted QWRs in the form of RFIs, Wells Fargo did not provide the requested information or documentation pertaining to the specific information sought in those RFIs, as required by 12 C.F.R. § 1024.36 and 12 U.S.C. § 2605(e)(2)(C).

32.     Similarly, relative to Plaintiffs and members of the Class who submitted QWRs in the form of NOEs, Wells Fargo did not correct any errors or conduct any investigation into the errors asserted in those NOEs, as required by 12 C.F.R. § 1024.35 and 12 U.S.C. § 2605(e)(2)(A)-(B).

---

[4] *See Schmidt v. Wells Fargo Bank, N.A.*, 2:17-cv-01708, at *3 (D. N.J. Oct. 8, 2019) ("[T]he Court agrees with Judge Falk's decision not to read a "litigation exception" into the statute. Op. at 5 (Nov. 30, 2018). Defendants do not cite any statute or regulation providing for such an exception and the Court is unconvinced by the sources referenced. *See* Op. at 15-18. First, Judge Falk was correct as to the relevance and persuasiveness of *In Re Wiggins*, No. 12-26993 (JKS), 2016 WL 7115864 (Bankr. D. N.J. Dec. 6, 2016). *See* Op. at 5 (Nov. 30, 2018). Second, in *Bullock v. Ocwen Loan Servicing, LLC*, the defendant's response was deemed substantively sufficient and the court did not rely on a litigation exception. 14-cv-3836, 2016 WL 1588494, at *2 n.6 (D. Md. Apr. 18, 2016).")

33.     As a result of Wells Fargo's failure to comply with RESPA and Regulation X, Plaintiffs and Class members were each harmed because they incurred the expenses associated with sending QWRs, RFIs, and NOEs—such as their time, postage, etc.—but they either did not receive the information to which they were legally entitled or did not receive a reasonable investigation of the purported errors regarding their loans, as required under RESPA and Regulation X. Indeed, because Wells Fargo "failed to do that which it was obligated to do [under RESPA]" the time and expense associated with Plaintiffs' and Class members' submission of QWRs, RFIs, and NOEs to Wells Fargo "metamorphosed into damages." *Marais v. Chase Home Fin., LLC*, 24 F.Supp.3d 712, 728 (S.D. Ohio 2014); *Justice v. Ocwen Loan Servicing*, 2015 WL 235738, at *19 (S.D. Ohio 2015); *McMillen v. Resurgent Capital Services, L.P.*, 2015 WL 5308236, at *10 (S.D. Ohio 2015); *Dale v. Selene Fin. LP*, 2016 WL 6024580, at *3 (N.D. Ohio 2016).

34.     Subsequently, Plaintiffs and Class members—*i.e.*, members of the Subclass (defined below)—sent NOEs to Wells Fargo concerning Wells Fargo's insufficient responses to their initial QWRs, RFIs, and/or NOEs.

35.     Had Wells Fargo adequately responded to Plaintiffs' and Subclass members' QWRs, RFIs, and/or NOEs, Plaintiffs and Subclass members would not have needed to send NOEs regarding Wells Fargo's erroneous assertion of an "active litigation" exception to its obligations under RESPA and Regulation X. As such, Plaintiffs and Subclass members were further harmed by Wells Fargo's failure to adequately respond to their QWRs, RFIs, and/or NOEs as it required them to incur the expenses associated with sending these subsequent NOEs—such as their time, postage, etc.

36.     Wells Fargo's practice of sending Active Litigation Letters and failing to provide substantive responses to borrowers' QWRs, RFIs, and NOEs, is part of a sustained pattern and practice of noncompliance with RESPA and Regulation X. Indeed, Wells Fargo's conduct was already the subject of a prior class action lawsuit filed in the Northern District of Ohio, as well as other individual lawsuits across the country. *E.g.*, *Lieber v. Wells Fargo Bank, N.A.*, Case No. 16-cv-02868-PAG (N.D. Ohio); *Schmidt*, 2:17-cv-01708 (D. N.J.).

37.     As a majority of homeowners sending QWRs, RFIs, and/or NOEs are involved in defending against foreclosure, permitting this kind of conduct would allow mortgage servicers and creditors—such as Wells Fargo—to unjustly hide behind the foreclosure process to unlawfully extinguish their obligations under RESPA and Regulation X.

38.     Plaintiffs and Class members are asserting claims for relief against Wells Fargo for breach of the duties owed to them, pursuant to 12 U.S.C. § 2605(e), 12 C.F.R. § 1024.35, and 12 C.F.R. § 1024.36.

39.     Plaintiffs and Class members have a private right of action, pursuant to 12 U.S.C. § 2605(f), for the claimed breaches, and RESPA provides for remedies including actual damages, costs, statutory damages, and attorneys' fees.

## FACTS RELEVANT TO PLAINTIFFS

### *Plaintiff McCoy*

40.     On April 4, 2018, McCoy, through counsel, sent three (3) RFIs to Wells Fargo via certified mail to the Designated Address (the "McCoy RFIs"). *See*, McCoy RFIs, attached hereto as <u>Exhibit 1</u>. However, McCoy did not receive any written acknowledgment of or response to the McCoy RFIs.

41.    McCoy was harmed by Wells Fargo's failure to respond to the McCoy RFIs because McCoy incurred costs relative to sending the McCoy RFIs—such as postage and attorneys' fees—but did not receive the information to which he was legally entitled, pursuant to RESPA and Regulation X. Indeed, as noted above, when Wells Fargo "failed to do that which it was obligated to do [under RESPA]" in response to the McCoy RFIs, the time and expense associated with McCoy's submission of the McCoy RFIs "metamorphosed into damages." *E.g.*, *Marais*, 24 F.Supp.3d at 728.

42.    Since McCoy did not receive any written acknowledgment of or response to the McCoy RFIs, on May 9, 2018, McCoy, through counsel, sent three (3) NOEs to Wells Fargo via certified mail to the Designated Address (the "Initial McCoy NOEs"). *See*, the Initial McCoy NOEs, attached hereto as Exhibit 2.

43.    Had Wells Fargo responded to the McCoy RFIs, McCoy would not have needed to send the Initial McCoy NOEs to Wells Fargo.

44.    Therefore, McCoy was also harmed by Wells Fargo's failure to respond to the McCoy RFIs because McCoy incurred costs relative to sending the Initial McCoy NOEs that he would not otherwise have incurred—such as postage and attorneys' fees—had Wells Fargo responded to the McCoy RFIs.

45.    On May 14, 2018, Wells Fargo sent correspondence to McCoy and his counsel acknowledging receipt of the McCoy RFIs and/or Initial McCoy NOEs stating "[i]t's our goal to complete the necessary research and provide you with a response by 05/29/18" (the "McCoy Acknowledgments"). *See*, the McCoy Acknowledgments, attached hereto as Exhibit 3.

46.    On May 25, 2019, Wells Fargo sent an Active Litigation Letter to McCoy's counsel stating that it would not be providing the information requested in the McCoy RFIs or

responding to the Initial McCoy NOEs because his account was in "active litigation" and "the issues raised are the same or very closely related to the issues raised in the pending litigation" (the "First McCoy Active Litigation Letter"). *See*, the First McCoy Active Litigation Letter, attached hereto as Exhibit 4.

47.    As set forth in the First McCoy Active Litigation Letter, Wells Fargo's refusal to provide a response to the McCoy RFIs and the Initial McCoy NOEs was based solely on the grounds that McCoy was involved in "active litigation" with Wells Fargo. *See*, Exhibit 4. However, the pendency of "active litigation" was not a valid basis under 12 C.F.R. § 1024.36(f)(1) upon which Wells Fargo could refuse to provide a response to the McCoy RFIs or the Initial McCoy NOEs.

48.    In addition to the harm McCoy incurred as a result of Wells Fargo's failure to respond to the McCoy RFIs, McCoy was harmed by Wells Fargo's failure to respond to the Initial McCoy NOEs because McCoy incurred costs relative to sending the Initial McCoy NOEs —such as postage and attorneys' fees—but Wells Fargo did not perform the investigation into the errors he asserted, as required by RESPA and Regulation X. Indeed, as noted above, when Wells Fargo "failed to do that which it was obligated to do [under RESPA]" in response to the Initial McCoy NOEs, the time and expense associated with McCoy's submission of the Initial McCoy NOEs "metamorphosed into damages." *E.g.*, *Marais*, 24 F.Supp.3d at 728.

49.    Since Wells Fargo refused to provide a response to the McCoy RFIs and the Initial McCoy NOEs on the grounds of a purported "active litigation" exception to its duties under RESPA and Regulation X, McCoy, through counsel, sent three (3) additional NOEs to Wells Fargo via certified mail to the Designated Address (the "Subsequent McCoy NOEs"). *See*, the Subsequent McCoy NOEs, attached hereto as Exhibit 5.

50.    Had Wells Fargo responded to the McCoy RFIs and/or the Initial McCoy NOEs, McCoy would not have needed to send the Subsequent McCoy NOEs to Wells Fargo.

51.    As such, McCoy was also harmed by Wells Fargo's failure to respond to the McCoy RFIs and the Initial McCoy NOEs because McCoy incurred costs relative to sending the Subsequent McCoy NOEs that he would not otherwise have incurred—such as postage and attorneys' fees—had Wells Fargo responded to the McCoy RFIs and/or the Initial McCoy NOEs.

### *Plaintiff Olivera*

52.    On September 9, 2019, Olivera, through counsel, sent an RFI to Wells Fargo via certified mail to the Designated Address (the "Olivera RFI"). *See*, the Olivera RFI, attached hereto as Exhibit 6.

53.    On September 16, 2019, Wells Fargo sent correspondence to Olivera's counsel stating that "it's our goal to complete the necessary research and provide you with a response by 09/30/19" (the "Olivera Acknowledgment"). *See*, Olivera Acknowledgement, attached hereto as Exhibit 7.

54.    On September 25, 2019, Wells Fargo sent an Active Litigation Letter to Olivera's counsel stating that it would not be providing the information requested in the Olivera RFI because his account was in "active litigation" and "the issues raised are the same or very closely related to the issues raised in the pending litigation" (the "Olivera Active Litigation Letter"). *See*, the Olivera Active Litigation Letter, attached hereto as Exhibit 8.

55.    As set forth in the Olivera Active Litigation Letter, Wells Fargo's refusal to provide a response to the Olivera RFI was based solely on the ground that Olivera was involved in "active litigation" with Wells Fargo. *See*, Exhibit 8. However, the pendency of "active

litigation" was not a valid basis under 12 C.F.R. § 1024.36(f)(1) upon which Wells Fargo could refuse to provide a response to the Olivera RFI.

56.    Olivera was harmed by Wells Fargo's failure to respond to the Olivera RFI because Olivera incurred costs relative to sending the Olivera RFI—such as postage and attorneys' fees—but did not receive the information to which he was legally entitled, pursuant to RESPA and Regulation X. Indeed, as noted above, when Wells Fargo "failed to do that which it was obligated to do [under RESPA]" in response to the Olivera RFI, the time and expense associated with Olivera's submission of the Olivera RFI "metamorphosed into damages." *E.g.*, *Marais*, 24 F.Supp.3d at 728.

57.    Since Wells Fargo refused to provide a response to the Olivera RFI on the grounds of a purported "active litigation" exception to its duties under RESPA and Regulation X, Olivera, through counsel, sent an NOE to Wells Fargo on October 28, 2019 via certified mail to the Designated Address (the "Olivera NOE"). *See*, the Olivera NOE, attached hereto as <u>Exhibit 9</u>.

58.    Had Wells Fargo responded to the Olivera RFI, Olivera would not have needed to send the Olivera NOE to Wells Fargo.

59.    As such, Olivera was also harmed by Wells Fargo's failure to respond to the Olivera RFI because Olivera incurred costs relative to sending the Olivera NOE that he would not otherwise have incurred—such as postage and attorneys' fees—had Wells Fargo responded to the Olivera RFI.

## <u>CLASS ACTION ALLEGATIONS</u>

60.    **Class Definition**: Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23 on behalf of a class of similarly situated individuals and entities (the "Class"), defined as follows:

All loan borrowers in the United States (1) who submitted to Wells Fargo a "qualified written request," as defined by 12 U.S.C. § 2605(e)(1)(B), in the form of a Request for Information or Notice of Error, and (2) to whom Wells Fargo refused to provide a complete response relative to the information requested and/or perform an investigation into the errors asserted therein on the grounds that their accounts were in "active litigation" and/or "the issues raised are the same or very closely related to the issues raised in the pending litigation"—*i.e.*, to whom Wells Fargo sent an Active Litigation Letter.

Excluded from the Class are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

61.    **Subclass Definition**: Plaintiffs also bring this action pursuant to Fed. R. Civ. P. 23 on behalf of a subclass of similarly situated individuals and entities ("the Subclass"), defined as follows:

All loan borrowers in the United States (1) who submitted to Wells Fargo a "qualified written request," as defined by 12 U.S.C. § 2605(e)(1)(B), in the form of a Request for Information or Notice of Error, (2) to whom Wells Fargo refused to provide a complete response relative to the information requested and/or perform an investigation into the errors asserted therein on the grounds that their accounts were in "active litigation" and/or "the issues raised are the same or very closely related to the issues raised in the pending litigation"—*i.e.*, to whom Wells Fargo sent an Active Litigation Letter—and (3) who submitted to Wells Fargo a second "qualified written request," as defined by 12 U.S.C. § 2605(e)(1)(B), in the form of a Notice of Error related to Wells Fargo's response.

Excluded from the Subclass are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the

Subclass; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

62.     **Numerosity and Ascertainability**: Upon information and belief, the Class is comprised of more than forty (40) members, such that the Class is so numerous that joinder of all members is impractical. This conclusion is reasonable because Wells Fargo is one of the largest mortgage providers in the country, which, as of 2012, held approximately thirty percent (30%) of the market share for mortgages in the United States. While the exact number of members in the Class is presently unknown and can only be ascertained through discovery, Class members can easily be identified through Defendant's records or by other means.

63.     **Commonality and Predominance:** All members of the Class have been subject to and affected by a uniform course of conduct; specifically, Wells Fargo refusing to provide a substantive response to RFIs and NOEs by claiming an "active litigation" exception. There are questions of law and fact common to the proposed Class that predominate over any individual questions, including:

   a.     Whether Wells Fargo sent Active Litigation Letters in response to Plaintiffs' and Class members' QWRs, RFIs, and NOEs;

   b.     Whether Wells Fargo's Active Litigation Letters failed to provide substantive responses to Plaintiffs' and Class members' QWRs, RFIs, and NOEs in violation of RESPA and Regulation X;

   c.     Whether Wells Fargo's practice of sending Active Litigation Letters is a sustained pattern and practice of noncompliance with RESPA and Regulation X;

   d.     Whether Plaintiffs and Class members suffered actual damages, and the measure and amount of those damages; and

   e.     Whether Plaintiffs and Class members are entitled to recover statutory damages.

64.    **Typicality**: Plaintiffs' claims are typical of the claims of the Class. Plaintiffs and Class members were denied a substantive response to which they were entitled because Defendant unlawfully refused to produce information due to an erroneous "active litigation" exception, and Plaintiffs and Class members incurred damages as a result.

65.    **Adequacy**: Plaintiffs will adequately represent the interests of the Class and do not have adverse interests to the Class. Plaintiffs' counsel has extensive experience litigating consumer class actions.

66.    **Superiority**: A class action is the superior method for the quick and efficient adjudication of this controversy. If individual Class members prosecuted separate actions it may create a risk of inconsistent or varying judgments that would establish incompatible standards of conduct.

## COUNT I
### (Violations of 12 U.S.C. § 2605(e)(2), 12 C.F.R. § 1024.35, and 12 C.F.R. § 1024.36)
### (On behalf of Plaintiffs and the Class)

67.    Plaintiffs repeat and reallege paragraphs 1 through 66 with the same force and effect as though fully set forth herein.

68.    Plaintiffs and Class members submitted RFIs and NOEs, each of which were a "qualified written request" as defined by 12 U.S.C. § 2605(e)(1)(B), to Wells Fargo at the Designated Address.

69.    Plaintiffs' and Class members' RFIs and NOEs requested specific information related to their loans, pursuant to 12 C.F.R. § 1024.36, and/or asserted that Wells Fargo committed specific errors related to the servicing of their loans, pursuant to 12 C.F.R. § 1024.35.

70.    Wells Fargo failed to provide a substantive written response to Plaintiffs' and Class members' RFIs and/or failed to correct any of the errors asserted in Plaintiffs' and Class

members' NOEs within the applicable timeframes of ten (10) or thirty (30) business days of receipt—that is, within ten (10) or thirty (30) business days of arrival at the Designated Address—as required by 12 U.S.C. § 2605(e)(1)(A), 12 C.F.R. § 1024.35(e), and 12 C.F.R. § 1024.36(d). Instead, Wells Fargo replied to Plaintiffs' and Class members' RFIs and NOEs with Active Litigation Letters.

71.     Wells Fargo's failure to provide appropriate responses to Plaintiffs' and Class members' RFIs and NOEs within the applicable timeframes of ten (10) or thirty (30) business days of receipt constitutes a clear violation of the requirements of 12 U.S.C. § 2605(e)(2) and 12 U.S.C. § 2605 (k)(1)(D), as interpreted by 12 C.F.R. § 1024.35 and 12 C.F.R. § 1024.36. Indeed, 12 C.F.R. § 1024.35(g) and 12 C.F.R. § 1024.36(f) do not provide for any such "active litigation" exception to Wells Fargo's duty to respond to RFIs and NOEs.

72.     Plaintiffs and Class members were harmed because they incurred the expenses associated with sending RFIs and NOEs—such as their time, postage, etc.—but did not receive the information or responses to which they were legally entitled, pursuant to RESPA and Regulation X.

73.     Wells Fargo is evading its legal obligations and has effectively stripped borrowers of their rights to submit RFIs and NOEs within and subject to the protective framework of RESPA by claiming exceptions to its obligation to respond that have no basis in fact or law.

74.     Wells Fargo's actions are in continuation of a pattern and practice of behavior in conscious disregard of the Plaintiffs' and Class members' rights.

75.     As a result of Wells Fargo's actions, Wells Fargo is liable to Plaintiffs and Class members for actual damages, statutory damages, costs, and attorney fees. 12 U.S.C. §§ 2605(f)(2)-(3).

**COUNT II**
**(Violations of 12 U.S.C. § 2605(e)(2), 12 C.F.R. § 1024.35, and 12 C.F.R. § 1024.36)**
**(On behalf of Plaintiffs and the Subclass)**

76.    Plaintiffs repeat and reallege paragraphs 1 through 66 with the same force and effect as though fully set forth herein.

77.    Plaintiffs and Subclass members submitted RFIs and NOEs, each of which were a "qualified written request" as defined by 12 U.S.C. § 2605(e)(1)(B), to Wells Fargo at the Designated Address.

78.    Plaintiffs' and Subclass members' RFIs and NOEs requested specific information related to their loans, pursuant to 12 C.F.R. § 1024.36, and/or asserted that Wells Fargo committed specific errors related to the servicing of their loans, pursuant to 12 C.F.R. § 1024.35.

79.    Wells Fargo failed to provide a substantive written response to Plaintiffs' and Subclass members' RFIs and/or failed to correct any of the errors asserted in Plaintiffs' and Subclass members' NOEs within the applicable timeframes of ten (10) or thirty (30) business days of receipt—that is, within ten (10) or thirty (30) business days of arrival at the Designated Address—as required by 12 U.S.C. § 2605(e)(1)(A), 12 C.F.R. § 1024.35(e), and 12 C.F.R. § 1024.36(d). Instead, Wells Fargo replied to Plaintiffs' and Subclass members' RFIs and NOEs with Active Litigation Letters.

80.    Wells Fargo's failure to provide appropriate responses to Plaintiffs' and Subclass members' RFIs and NOEs within the applicable timeframes of ten (10) or thirty (30) business days of receipt constitutes a clear violation of the requirements of 12 U.S.C. § 2605(e)(2) and 12 U.S.C. § 2605 (k)(1)(D), as interpreted by 12 C.F.R. § 1024.35 and 12 C.F.R. § 1024.36. Indeed, 12 C.F.R. § 1024.35(g) and 12 C.F.R. § 1024.36(f) do not provide for any such "active litigation" exception to Wells Fargo's duty to respond to RFIs and NOEs.

81.    As a result of Wells Fargo's assertion of an erroneous "active litigation" exception to its obligations under RESPA and Regulation X, Plaintiffs and Subclass members were required to send additional "qualified written requests," as that term is defined by 12 U.S.C. § 2605(e)(1)(B), in the form of NOEs.

82.    Had Wells Fargo adequately responded to Plaintiffs' and Subclass members' initial RFIs and/or NOEs, Plaintiffs and Subclass members would not have needed to send additional NOEs regarding Wells Fargo's erroneous assertion of an "active litigation" exception to its obligations under RESPA and Regulation X.

83.    Plaintiffs and Subclass members were harmed by Wells Fargo's failure to adequately respond to their RFIs and/or NOEs because it required them to incur the time and expenses associated with sending the subsequent NOEs after receiving Active Litigation Letters from Wells Fargo.

84.    Wells Fargo is evading its legal obligations and has effectively stripped borrowers of their rights to submit RFIs and NOEs within and subject to the protective framework of RESPA by claiming exceptions to its obligation to respond that have no basis in fact or law.

85.    Wells Fargo's actions are in continuation of a pattern and practice of behavior in conscious disregard of the Plaintiffs' and Subclass members' rights.

86.    As a result of Wells Fargo's actions, Wells Fargo is liable to Plaintiffs and Subclass members for actual damages, statutory damages, costs, and attorney fees. 12 U.S.C. §§ 2605(f)(2)-(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs DON MCCOY and MAXIMILIANO OLIVERA, individually, and on behalf of the Class and Subclass, pray for an Order as follows:

A.    Finding that this action satisfies the prerequisites for maintenance as a class action and certifying the Class and/or Subclass defined herein;

B.    Designating Plaintiffs as representatives of the Class and Subclass and their undersigned counsel as Class Counsel;

C.    Entering judgment in favor of Plaintiffs, the Class, and Subclass and against Defendant;

D.    Awarding Plaintiffs, the Class, and Subclass their actual damages and statutory damages as allowed under RESPA;

E.    Awarding Plaintiffs, the Class, and Subclass attorneys' fees and costs, including interest thereon, as allowed or required by law; and,

F.    Granting all such further and other relief as this Court deems just and appropriate.

## JURY DEMAND

Plaintiffs hereby request a trial by jury on all issues.

Class Action Allegation Complaint: Page 21
*McCoy*, et al.*, v. Wells Fargo Bank N.A.*

Dated: January 31, 2020

Respectfully submitted,

*/s/ Jeffrey A. Long*
Jeffrey A. Long, OSB No. 862350 (Lead Counsel)
4248 Galewood St., Suite 18
Lake Oswego, OR 97035
Telephone: (503) 374-9777
Facsimile: (503) 765-5544
jefflonglawyer@gmail.com
*Lead Counsel for Plaintiffs Don McCoy and*
*Maximiliano Olivera*

Marc E. Dann (*pro hac vice* anticipated)
mdann@dannlaw.com
notices@dannlaw.com
DANNLAW
P.O. Box 6031040
Cleveland, OH 44103
Phone: (216) 373-0539
*Co-Counsel for Plaintiffs Don McCoy and*
*Maximiliano Olivera*

Thomas A. Zimmerman, Jr. (*pro hac vice*
anticipated)
tom@attorneyzim.com
Matthew C. De Re (*pro hac vice* anticipated)
matt@attorneyzim.com
ZIMMERMAN LAW OFFICES, P.C.
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
Telephone: (312) 440-0020
*Co-Counsel for Plaintiffs Don McCoy and*
*Maximiliano Olivera*