Marc E. Dann
DannLaw
15000 Madison Avenue
Lakewood, OH 44107
(216) 373-0539 telephone
(216) 373-0536 facsimile
mdann@dannlaw.com

[Additional Counsel listed on subsequent page]

*Attorneys for Plaintiffs Donald McCoy III and Maximiliano Olivera and the Putative Class*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
### MEDFORD DIVISION

| | |
|---|---|
| DONALD E. MCCOY III and MAXIMILIANO OLIVERA, individually, and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br> v.<br><br>WELLS FARGO BANK, N.A.<br><br>    Defendant. | Case No. 1:20-cv-00176-CL<br><br>District Judge Michael J. McShane<br>Magistrate Judge Mark D. Clarke<br><br><br>**PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:   July 7, 2023<br>Time:  10:00 a.m. PT<br>Room: 2<br><br><br>Complaint filed: January 31, 2020<br>Trial Date: None Set |

**NOTICE OF MOTION AND
<u>MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>**

**PLEASE TAKE NOTICE** that on July 7, 2023, at 10:00 a.m. PT, or as soon thereafter as the matter may be heard, Plaintiffs Donald E. McCoy and Maximiliano Olivera (collectively, the "Plaintiffs") shall appear before the Honorable Michael J. McShane of the United States District Court for the District of Oregon, Wayne L. Morse United States Courthouse, 405 East 8th Avenue, Eugene, OR 97401, via video conference, at the following link:

Video Link: https://meet.uc.uscourts.gov/meeting/790749810?secret=VIJCSk8gatW7ZDFIHorvlQ

Telephone Number: 571-353-2301

Conference ID: 790749810#

Access Code: 2022#

and shall there and then present Plaintiffs' Motion for Final Approval of Class Action Settlement.

The Motion will be based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, and materials attached as exhibits thereto.

Date: June 21, 2023                    <u>/s/ Marc E. Dann</u>
                                       Marc E. Dann

                                       *Attorney for Plaintiffs*
                                       DONALD E. MCCOY, III AND MAXIMILIANO
                                       OLIVERA

1

2

**TABLE OF CONTENTS**

3

STATEMENT OF ISSUES TO BE DECIDED ........................................................................1

4

I.    INTRODUCTION ..................................................................................................... 2

5

II.   BACKGROUND ....................................................................................................... 3

6

A.  Plaintiffs' Claims................................................................................................ 3

7

B.  History of the Litigation and Settlement Negotiations ...................................... 3

8

9

C.  Terms of the Settlement ..................................................................................... 5

10

1.  The Proposed Settlement Class.................................................................... 5

11

2.  Settlement Fund ........................................................................................... 5

12

a.   Monetary Payments to Settlement Class Members ........................... 5

13

b.   Incentive Awards to Plaintiffs ........................................................... 6

14

c.   Attorneys' Fees and Costs .................................................................. 6

15

d.   Residual Distribution ......................................................................... 7

16

17

e.   Release ................................................................................................ 7

18

D.  Notice Implementation........................................................................................7

19

E.  Reaction of the Settlement Class........................................................................ 8

20

III.  ARGUMENT ............................................................................................................ 8

21

A.  The Settlement Class Should Be Certified For the Purpose of Entering Judgment on the Settlement............................................................................................................ 8

22

23

1.  The Settlement Class Meets the Requirements of Rule 23(a) ..................... 8

24

2.  The Settlement Class Meets the Requirements of Rule 23(b) ..................... 9

i

25

B.  The Settlement Should Be Finally Approved ....................................................... 11

1.  Notice Was Adequate, and the Reaction of Class Members Was Positive. ........... 12

2.  The Settlement Is Adequate in Light of the Costs, Risks, and Delay of Trial........ 13

3.  The Method for Distributing Relief Is Adequate ..................................................... 14

4.  The Proposal Treats Class Members Equitably Relative to Each Other................ 15

5.  The *Hanlon* Factors Support Final Approval ........................................................ 16

6.  The Presence of a Government Participant............................................................. 17

IV.  CONCLUSION .................................................................................................................... 17

# TABLE OF AUTHORITIES

## *Cases*

*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591 (1997)..........................................................................................10, 11

*Giles v. St. Charles Health Sys., Inc.*,
   294 F.R.D. 585 (D. Or. 2013)...............................................................................9

*Gudimetla v. Ambow Educ. Holding*,
   2014 WL 12594458 (C.D. Cal. Dec. 2, 2014) .....................................................9, 11

*In re Bluetooth Headset Products Liab. Litig.*,
   654 F.3d. 935 (9th Cir. 2011)................................................................................16

*In re Initial Pub. Offering Sec. Litig.*,
   243 F.R.D. 79 (S.D.N.Y. 2007) ............................................................................14

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ................................................................................16

*Khoja v. Orexigen Therapeutics, Inc.*,
   2021 WL 1579251 (S.D. Cal. Apr. 22, 2021) ......................................................9

*Moreno v. Capital Bldg. Maint. & Cleaning Services, Inc.*,
   19-CV-07087-DMR, 2021 WL 1788447 (N.D. Cal. May 5, 2021).......................12

*Nen Thio v. Genji, LLC*,
   14 F. Supp. 3d 1324 (N.D. Cal. 2014) .................................................................13

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d. 615 (9th Cir. 1982) ...............................................................................13

*Phillips Petroleum Co. v. Shutts*,
   472, U.S. 792 (1985)..............................................................................................11

*Wal-mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)..............................................................................................9

*Wilcox Dev. Co. v. First Interstate Bank of Or., N.A.*,
   97 F.R.D. 440 (D. Or. 1983)................................................................................9

### _Statutes, Regulations, and Rules_

12 U.S.C. §§ 2601, *et seq.*..................................................................................3, 4

12 U.S.C. § 2605(e) ................................................................................................5

12 U.S.C. § 2605(f)(1)(B)......................................................................................14

12 U.S.C. § 2605(f)(2)(B)......................................................................................14

12 U.S.C. § 2605(f)(3) ............................................................................................7

28 U.S.C. § 1715..................................................................................................17

12 C.F.R. § 1024.1, *et seq.*................................................................................3, 4

Fed. R. Civ. P. 23(a) .................................................................................1, 5, 8, 9, 11

Fed. R. Civ. P. 23(b)(3)............................................................................5, 9, 10, 11

Fed. R. Civ. P. 23(e)(1)(B)(ii)..................................................................................1

Fed. R. Civ. P. 23(e)(2)..............................................................................1, 11, 16

### _Other Authorities_

7A Wright, Miller & Kane, Federal Practice & Procedure § 1788 (1986)....................................10

Memorandum Of Points And Authorities In Support of Plaintiff's Motion for Certification of a Fed. R. Civ. P.
Rule 23(b)(2) Class                                    Case No. 3:20-CV-04168-WHA

### STATEMENT OF ISSUES TO BE DECIDED

1.     Whether the Settlement Class meets the standards under Rule 23(a), (b)(3), and (e)(1)(B)(ii) of the Federal Rules of Civil Procedure to be certified for purposes of judgment on the Settlement.

2.     Whether the Settlement meets the standard under Rule 23(e)(2) of the Federal Rules of Civil Procedure as fair, reasonable, and adequate.

## I.     INTRODUCTION

Plaintiffs and Defendant Wells Fargo Bank, N.A. ("Defendant" or "Wells Fargo") have reached a class action settlement that, if approved, would require Wells Fargo to pay a total of $269,250 to create a settlement fund (the "Settlement Fund") for the benefit of the Class. In addition to the Payment to Class, the Settlement Fund also will include the payment of any approved Incentive Awards to the named Class Representatives and Wells Fargo's payment of Administration Costs. Following the deduction of Incentive Awards and Administration Costs, eligible claimants will be entitled to a distribution of one Payment per Federally Related Mortgage Loan ("Loan") within the Class. The Parties will effectuate a secondary distribution to Class Members to the extent there are uncashed checks or if there are otherwise additional funds remaining in the Settlement Fund and it makes economic sense to issue a secondary distribution.

On February 1, 2023, the Court entered an Order Granting Preliminary Approval of the Settlement ("Preliminary Approval Order," Dkt. 65). Rust Consulting Inc. ("Settlement Administrator" or "Rust Consulting")—the Parties' agreed upon Settlement Administrator—in conjunction with Defendant, carried out the notice plan subsequent to the Court's Preliminary Approval Order. *See* Declaration of Matthew Stofferahn ("Stofferahn Decl."), attached hereto as <u>Exhibit 1</u>. Rust Consulting and Defendant report a robust notice program that satisfies Fed. R. Civ. P. 23 and due process as the best notice practicable under the circumstances. Notice was directed to Settlement Class Members through direct mail. Stofferahn Decl. ¶¶ 8-13. Rust Consulting also established a Settlement website and toll-free phone number that provided additional information to Settlement Class Members about their rights, the litigation, and the Settlement. Stofferahn Decl. ¶¶ 14-16.

The Settlement Class Members have engaged favorably with the Settlement. The response is a testament to the robustness of the notice program and the fairness of the Settlement. The Settlement Class

Members have reacted favorably to the Settlement, as notice was sent out to all 93 Class Members with 94.62% of Class Members receiving notice after diligent efforts to locate all Class Members. Stofferahn Decl. ¶¶ 8-13.  Only one (1) request for exclusion was received, and Rust Consulting did not receive a single objection. Stofferahn Decl. ¶¶ 17-18.

As set forth below, the Settlement meets the standard for final approval as fair, reasonable, and adequate under Federal Rule of Civil Procedure 23(e). Accordingly, Plaintiffs request that the Court certify the Settlement Class for purposes of entering judgment on the Settlement and finally approve the Settlement as fair, reasonable, and adequate. Attached hereto as Exhibit 2 is a proposed order granting final approval of the Settlement Agreement, and attached as Exhibit 3 is a proposed judgment.

## II.     BACKGROUND

### A.     Plaintiffs' Claims

Plaintiffs and proposed Class Members formerly held or currently hold mortgage loans that are or were serviced by Defendant. Plaintiffs allege that they and putative class members submitted borrower inquiries to Defendant, which Defendant was obligated to answer pursuant to the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, et seq. ("RESPA"), and the regulations promulgated pursuant thereto, known as "Regulation X," 12 C.F.R. § 1024.1, et seq. Plaintiffs alleged that Defendant responded with letters informing Plaintiffs and Class Members that Defendant would not be providing a response to their borrower inquiries because their accounts were in active litigation (the "Active Litigation Letters"). Plaintiffs further allege that, in sending the Active Litigation Letters in lieu of providing substantive responses to Plaintiffs' and Class Members' inquires, Defendant violated RESPA and Regulation X, and that Plaintiffs and Class Members sustained damages as a result.

### B.     History of the Litigation and Settlement Negotiations

On January 31, 2020, Plaintiffs filed their initial class action Complaint (the "Complaint") in the

United States District Court for the District of Oregon entitled *Donald McCoy, III, et al. v. Wells Fargo Bank, N.A.*, Case No. 1:20-cv-00176-CL (the "Action"). Dkt. # 1. Plaintiffs asserted claims against Defendant for RESPA violations pursuant to 12 U.S.C. 2601, et seq. and for violations of Regulation X, 12 C.F.R. § 1024.1, et seq. In response to a motion to dismiss the Complaint, Plaintiffs sought, and were granted, leave to file an amended complaint. Dkt. # 29. Plaintiffs subsequently filed their First Amended Complaint ("FAC") on June 15, 2020. Dkt. # 31.

On July 22, 2020, Defendant moved to dismiss the FAC (the "Motion to Dismiss"). Dkt. # 35. On July 21, 2021, following oral argument, Magistrate Judge Mark D. Clarke issued his Findings and Recommendation in which he recommended that Defendant's Motion to Dismiss the FAC be granted. Dkt. # 51. Plaintiffs objected to the Magistrate Judge's Findings and Recommendation. After briefing on Plaintiffs' objections, Judge Michael J. McShane adopted the Magistrate Judge's Findings and Recommendation in full and dismissed this case. Dkt. # 55.

On October 15, 2021, Plaintiffs filed a Notice of Appeal. Dkt. # 57. The main issue on appeal concerned whether Plaintiffs' borrower inquiries had to be related to loan "servicing" to trigger Defendant's duty to respond in accordance with RESPA and Regulation X, or whether those inquiries could be related to a broader range of topics as contemplated by 12 U.S.C. § 2605(k)(1) of RESPA and the applicable provisions of Regulation X. On March 28, 2022, Plaintiffs submitted their opening brief (Appellate Dkt. 17), and, on April 4, 2022, the Consumer Financial Protection Bureau ("CFPB") filed an amicus curiae brief in support of Plaintiffs' position (Appellate Dkt. 23).

Thereafter, the appeal was held in abeyance so the Parties could engage in discussions before the Ninth Circuit's appointed mediator, Robert Kaiser, followed by a mediation before the Honorable Herbert Hoffman (ret.) of Judicate West (the "Mediator"), which was held on September 21, 2022. The basic terms of the Settlement were negotiated and finalized as a result of that mediation.

**C.    Terms of the Settlement**

**1.    The Proposed Settlement Class**

The Class is defined as any person who, during the Class Period: (i) was a borrower on a Federally Related Mortgage Loan during the Class Period; (ii) sent a writing (that was not a payment coupon) to Wells Fargo at the Designated Address requesting information about or asserting an error concerning that Federally Related Mortgage Loan; (iii) had a code on Wells Fargo's records showing there was active litigation and who received a letter from Wells Fargo referencing active litigation, active mediation, or active bankruptcy; and (iv) to whom neither Wells Fargo nor its counsel provided all of the requested information or corrected the error within the time provided by 12 U.S.C. 2605(e). *See* Settlement Agreement ("SA"), Definitions, ¶ 6, Dkt. # 62-1.

The Parties agree to certification of the Class pursuant to Fed. R. Civ. P. Rules 23(a) and 23(b)(3). *See* SA, ¶ I(B), Dkt 62-1. Defendant's agreement to certification of the Rule 23(b)(3) Class is solely for the purpose of the Settlement and does not, and shall not, constitute, in this or any other proceeding, an admission by Defendant of any kind or any determination that certification of a class for trial or other litigation purposes in the Action or any other separate action is, or would be, appropriate. *Id*. Defendant reserves all rights to challenge certification of any class or subclass for trial or other litigation purposes in the Action or in any other action on all available grounds as if no class had been certified in this Action for purposes of the SA. *Id*.

**2.    Settlement Fund**

**a.    Monetary Payments to Settlement Class Members**

Defendant will fund a Settlement Fund in the amount of $269,250.00, which will provide the following benefits: Payments to Settlement Class Members; costs of Settlement Administration; and Incentive Awards in the amount of $5,000.00 to each of the Settlement Class Representatives, Donald E.

McCoy III and Maximiliano Olivera. *See* SA § III(A), (B), Dkt. # 62-1.

Wells Fargo has identified ninety-three (93) Loans within the Class. The borrower(s) of each Loan shall be entitled to a distribution following the deduction of Incentive Awards and Administration Costs. To the extent there are co-borrowers on each Loan, only one payment will be made for each Loan to the co-borrowers jointly.  Settlement checks to Class Members shall be mailed directly by the Settlement Administrator to the Class Members without a need for a claim process. In the event a member of the Class is in a bankruptcy proceeding, then the Settlement Administrator may pay any compensation under the Settlement Agreement to the bankruptcy trustee or otherwise as required under any applicable bankruptcy law, rules, and/or court orders.

### b.    Incentive Awards to Plaintiffs

Plaintiffs filed their Motion for Incentive Awards, in which Plaintiffs requested that the Court award each of them an Incentive Award in the amount of $5,000 to be paid from the Settlement Fund. *See* Motion for Attorneys' Fees and Costs, and Class Representative Incentive Awards ("Motion for Fees"), Dkt #67; *see also* SA ¶ III(B)(1), Dkt. # 62-1. This award is in recognition of Representative Plaintiffs' acceptance of any risks that may have attended their suing their mortgage loan servicer, as well as their efforts on behalf of the Settlement Class to obtain the benefits of the Settlement, including their role assisting Class Counsel in the investigation into the facts concerning the Action, as well as their participation and feedback for each of the Complaints that were filed in the matter. Plaintiffs also participated in the mediation with the Mediator and had an active role in negotiating and approving the terms of the Settlement. *See* Declaration of Thomas A. Zimmerman, Jr., Dkt. # 68, ¶¶ 51-52.

### c.    Attorneys' Fees and Costs

Class Counsel applied to the Court for an award of reasonable attorneys' fees in the amount of $260,000 plus litigation expenses in the amount of $3,202.59, payable separate and apart from the

1    Settlement Fund. *See* Motion for Fees, Dkt #67; *see also* SA ¶ III(C), Dkt. 62-1. Any award of attorneys'

2    fees and costs will be paid by Defendant in addition to its payment for the Settlement Fund. *Id.* Class

3    Counsel's request is based on the fee shifting provision under RESPA (12 U.S.C. 2605(f)(3)). *Id.*

4    Defendant does not object to Plaintiffs' request for a separate award of attorneys' fees and costs pursuant

5    to that fee shifting provision of RESPA. *Id.*

6              **d.    Residual Distribution**

7              There will be no reversion of Settlement Funds to Defendant. *See* SA ¶ III(B)(4), Dkt # 62-1.  If

8    there is any balance remaining in the Settlement Fund after the payment of Incentive Awards,

9    Administration Costs, and the distribution of Payments to Class Members, the Parties will effectuate a

10   secondary distribution to Class Members to the extent there are uncashed checks or if there are otherwise

11   additional funds remaining in the Settlement Fund and it makes economic sense to issue a secondary

12   distribution. *See* SA ¶ III(B)(2), Dkt. # 62-1.  A *cy pres* recipient—Credit Builder's Alliance—shall be

13   awarded any residual funds in the event it does not make economic sense to issue a secondary distribution.

14   *See* SA ¶ III(B)(5), Dkt. # 62-1.

15             **e.    Release**

16             The Settlement Class Members obtain considerable benefits in exchange for their release of claims

17   related to the Active Litigation Letters. The release encompasses all claims that Settlement Class Members

18   had, have, or may have against Defendant and/or the Class Releasees that result from, arise out of, are

19   based upon, or relate to the Action, that were or could have been alleged in the Action, based upon the

20   facts alleged in the FAC. *See* SA ¶ II(A), Dkt. # 62-1. The Settlement does *not* release any claims that are

21   unrelated to the Action or the allegations in the Action. *Id.*

22        **D.    Notice Implementation**

23             The Settlement designated Rust Consulting as the Settlement Administrator, and the Court

24

25

approved that designation in its Preliminary Approval Order. *See* Preliminary Approval Order, ¶ 8, Dkt #65. The Court approved the form and content of the Postcard Notice and the Detailed Notice attached to the Settlement Agreement and the method set forth in the Settlement Agreement for notifying the Class Members of the Settlement and its terms and conditions, which was implemented. *See* Preliminary Approval Order, ¶ 9, Dkt #65. On March 3, 2023, Rust Consulting caused notice to be disseminated through the mailing of a Postcard Notice, and the Detailed Notice was posted on the Settlement Website. *See* Stofferahn Decl. ¶¶ 9-14.

Within 30 days after the date of entry of the Preliminary Approval Order, Rust Consulting established a dedicated Settlement Website that includes the Complaint, the First Amended Complaint, the Settlement Agreement, the Preliminary Approval Order, the Order Vacating the Dismissal and Judgment, and the Plaintiffs' Motion for Attorneys' Fees, Costs, and Inventive Awards. *See* SA ¶ V(A)(4), Dkt. # 62-1; *see also* Stofferahn Decl. ¶ 14. The Settlement Website has received at least 1,091 unique visits as of the filing of this Motion. *Id.* ¶ 15.  The Settlement Website also included a "contact us" feature, which directed Settlement Class Members to contact the toll-free telephone number created by the Settlement Administrator as part of the Settlement. *Id.* at ¶¶ 15-16.  As of the filing of this Motion, the toll-free number has received thirty calls. *Id.* at ¶ 16.

### E.     Reaction of the Settlement Class

The Class's response to the Settlement has been positive. Only one Settlement Class Member submitted a request for exclusion from the Settlement. *See* Stofferahn Decl. ¶ 17. And there were no objections to the Settlement. Stofferahn Decl. ¶ 18.

## III.    ARGUMENT

### A.     The Settlement Class Should Be Certified For the Purpose of Entering Judgment on the Settlement

#### 1.     The Settlement Class Meets the Requirements of Rule 23(a)

The prerequisites for class certification under Fed. R. Civ. P. 23(a) are numerosity, commonality, typicality, and adequacy. The Settlement Class satisfies these criteria.

The Settlement Class consists of ninety-three (93) members which is enough to render joinder impractical. *See* SA ¶ III.B.3, Dkt. 62-1. In the Ninth Circuit, "40 class members are generally sufficient to meet the numerosity requirement." *Giles v. St. Charles Health Sys., Inc.,* 294 F.R.D. 585, 590 (D. Or. 2013); see also *Wilcox Dev. Co. v. First Interstate Bank of Or., N.A.,* 97 F.R.D. 440, 443 (D. Or. 1983) (same). In addition, the claims of all Settlement Class Members "depend upon a common contention" the determination of which "will resolve an issue central to the validity of each" Settlement Class Member's claims. *Wal-mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, Defendant's alleged failure to properly answer Plaintiffs' and Class Members' borrower inquiries was the result of a procedure, and, thus, Plaintiffs and all Class Members were impacted by the same alleged misconduct.

Typicality and adequacy are also satisfied. The typicality requirement is "permissive" and requires only that the named plaintiff's claims "are reasonably coextensive with those of absent class members." *Khoja v. Orexigen Therapeutics, Inc.,* 2021 WL 1579251 at *4 (S.D. Cal. Apr. 22, 2021). But, typical does not mean identical. *Gudimetla v. Ambow Educ. Holding*, 2014 WL 12594458, at *3 (C.D. Cal. Dec. 2, 2014) ("Typicality under Rule 23(a)(3) requires a showing that the named plaintiffs are members of the class they represent and that their claims are "reasonably coextensive with those of absent class members," but not necessarily "substantially identical."). Here, as noted above, Defendant's alleged conduct affected Plaintiffs and all Class Members equally. In addition, Defendant has no defenses unique to the proposed Class Representatives. Therefore, typicality is satisfied.

## 2.    The Settlement Class Meets the Requirements of Rule 23(b)

The Court must also determine that the Settlement Class meets one of the subsections of Rule 23(b). To certify a class under Rule 23(b)(3), the Court must find that "the questions of law or fact common

9

Memorandum of Points and Authorities in Support of
Plaintiffs' Motion for Final Approval of Class Action Settlement -- 1:20-cv-00176-CL

to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 594 (1997). When common questions are a significant aspect of a case and they can be resolved in a single action, class certification is appropriate. See 7A Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d, § 1788, at 528 (1986).

Here, the Settlement Class satisfies Rule 23(b)(3) because common questions predominate over any questions affecting only individual members, and class resolution is superior to other methods for a fair resolution of the controversy. The central issue in the case for Plaintiffs and each Class Member concerns Defendant's alleged refusal to provide a substantive response to borrower inquiries by claiming an "active litigation" exception. Since Plaintiffs' and all Class Members' claims arise out of the same alleged misconduct on the part of Defendant, no serious question exists that issues surrounding that alleged misconduct—such as whether Plaintiffs' and Class Members' borrower inquires triggered Defendant's duty to respond, and whether the Active Litigation Letters complied with RESPA and Regulation X—are common to Plaintiffs and each member of the Class. As such, Plaintiffs and every Class Member share considerable factual and legal issues in common. Certification for purposes of settlement is further supported by the fact that approving the settlement would obviate potential manageability complications of a trial, "for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Moreover, many of the Class Members are individuals for whom prosecution of an individual action would not provide a realistic or efficient alternative, given the comparatively small size of each individual Class Member's purported claim (*e.g.*, postage and possibly some attorney's fees). In addition,

individual Class Members likely would be unable or unwilling to shoulder the great expense of litigating the claims at issue against the well-funded Defendant. As such, the relatively small class size, along with the reasonable damage recovery, make a class action the preferable method of adjudicating this matter. See *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 809 (1985) ("most of the plaintiffs would have no realistic day in court if a class action were not available"); *Gudimetla*, 2014 WL 12594458, at *4 (finding superiority where "[t]he alternative to a class action—individualized actions—would be inefficient, costly, and unwieldy"); *Amchem*, 521 U.S. at 617 ("While the text of Rule 23(b)(3) does not exclude from certification cases in which individual damages run high, the Advisory Committee had dominantly in mind vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'").

Because the Settlement Class meets the elements of Rule 23(a) and (b), the Court should reaffirm its findings in the Preliminary Approval Order and certify the Settlement Class for purposes of granting final approval and entering judgment on the Settlement.

### B.    The Settlement Should Be Finally Approved

Upon final approval, Rule 23(e)(2) requires the Court to consider whether:

A.    the class representatives and class counsel have adequately represented the class;

B.    the proposal was negotiated at arm's length;

C.    the relief provided for the class is adequate, taking into account:

  i.    the costs, risks, and delay of trial and appeal;

  ii.    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

  iii.    the terms of any proposed award of attorney's fees, including timing

of payment; and

iv.     any agreement required to be identified under Rule 23(e)(3); and

D.     the proposal treats class members equitably relative to each other.

*Moreno v. Capital Bldg. Maint. & Cleaning Services, Inc.*, 19-CV-07087-DMR, 2021 WL 1788447, at

*10 (N.D. Cal. May 5, 2021) (quoting Fed. R. Civ. P. 23(e)).

Because the analysis on preliminary approval included many of these factors, Plaintiffs' motion

for preliminary approval has discussed these factors at length. Plaintiffs incorporate those arguments as if

fully set forth herein. Plaintiffs address these factors below inasmuch as they are further informed by the

developments of the implementation of the notice plan and claims administration and the Settlement Class

Members' reaction to the Settlement.

**1.     Notice Was Adequate, and the Reaction of Class Members Was Positive.**

The Declaration of Matthew Stofferahn contains the necessary details with respect to notice based

on the records contained in the Class List.  On February 3, 2023, Rust Consulting received a data file

containing 93 records which contained the names and mailing addresses for each of the Settlement Class

Members ("Class List"). Stofferahn Decl. ¶ 7.  Each of these Class Members was assigned a unique

"Notice ID" that was included in the personalized notice sent to each Class Member by mail. *Id.* at ¶ 8.

Each mailing was sent only after the Settlement Administrator verified each of the addresses via the

NCOA database and updated the mailing addresses as necessary. *Id.* at ¶ 9.  On March 3, 2023 the Postcard

Notice was sent to each of the 93 Class Members. *Id.* at ¶ 9 After mailing, the Settlement Administrator

re-mailed the Postcard Notice to Settlement Class Members for which it received a forwarding address

notification and performed an address verification search (also known as skip tracing) for all returned

notices which came back without a forwarding address. *Id.* at ¶¶ 10-11.  As a result of the diligence of the

Settlement Administrator, notice was received by 94.62% of the Class Members. *Id.* at ¶ 12.   The

Settlement Administrator also mailed to the Class Members the Supplemental Notice of Hearing on April 17, 2023. *Id.* at ¶ 13.

In accordance with the Settlement Agreement, on March 3, 2023, Rust Consulting established the following website dedicated to this Settlement: https://wellsfargoloaninquirylawsuit.com ("Settlement Website"). *Id.* at ¶ 14. The Settlement Website contains general information about the Settlement, including important dates and deadlines, important documents available for download, responses to frequently asked questions and contact information for the Settlement Administrator. *Id.*  In addition, on March 3, 2023, Rust Consulting activated the following toll-free number established for this Settlement: 1-833-472-1988. *Id.* at ¶ 16. The toll-free hotline utilizes an interactive voice response ("IVR") system to provide Settlement Class Members with responses to frequently asked questions and provides essential information regarding the Settlement. *Id.* The toll-free hotline is available 24 hours a day, 7 days a week. Settlement Class Members can also request, via the toll-free hotline, essential information about the settlement. *Id.*

The deadline for Settlement Class Members to submit requests for exclusion and objections to the Settlement was May 2, 2023. *See* Preliminary Approval Order, ¶ 13, Dkt. # 65. There was one (1) request for exclusion. Stofferahn Decl. ¶ 17. And, Rust Consulting has not received, nor been made aware of, any objections to the Settlement. *Id.* at ¶ 18.

### 2. The Settlement Is Adequate in Light of the Costs, Risks, and Delay of Trial

"To evaluate the range of possible approval criterion, which focuses on substantive fairness and adequacy, courts primarily consider plaintiff's expected recovery balanced against the value of the settlement offer." *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1335 (N.D. Cal. 2014); see also *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 628 (9th Cir."1982) ("[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement

inadequate or unfair.").

As evidenced by Defendant's motions to dismiss, Defendant is well funded and would be committed to a vigorous defense through trial, judgment, and appeal. Achieving finality in this case could take years and would certainly involve considerable expense of the parties and the judicial system. Even then, the Settlement Class could wind up losing the case. Furthermore, because Defendant continues to service the loans for the Settlement Class Members who are Active Borrowers, settlement of this Action facilitates the Parties' performance of their obligations and services.

In this case, Class Members are likely to receive *more* than the statutory damages that they would be entitled to if the matter had gone to trial (or if they pursued their claims on an individual basis). Compare, SA ¶ III, Dkt # 62-1 (providing for a payment of approximately $2,250 to each Class Member) with 12 U.S.C. 2605(f)(1)(B) (providing for statutory damages "in an amount not to exceed $2,000") and 12 U.S.C. 2605(f)(2)(B) (same). As such, the terms of the proposed Settlement here are clearly "within the range of possible approval", especially given the very substantial risks and expense Plaintiffs face in continuing to litigate this case. See, e.g., *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 93 (S.D.N.Y. 2007).

### 3. The Method for Distributing Relief Is Adequate

Payments to Class Members are to be distributed within 30 days after entry of final approval. *See* SA ¶ VII(B), Dkt. # 62-1. Settlement Class Members will be sent a check via U.S. mail. For any checks that are returned as undeliverable, the Settlement Administrator will conduct a skip trace to attempt to locate a more recent address.

The Settlement uses reasonable methods for processing claims and distributing relief to eligible claimants. *See* SA ¶ VII(B), Dkt. # 62-1.

Any Attorneys' Fees and Expenses Award must be approved by the Court upon an application

filed by Class Counsel. Class Counsel do not presume to be entitled to such an award at this time and any award must be justified and approved by the Court. However, for purposes of analysis, Plaintiffs' counsel addresses their projected fee request of $260,000 plus litigation expenses in the amount of $3,202.59. *See* Motion for Fees, Dkt # 67.

Since the Attorneys' Fees and Expenses Award would be in addition to the amount paid to the Settlement Fund, this award will in no way impact the amount that Class Members receive under the Settlement Agreement. *See* SA, ¶¶ III(C) and VI(A), Dkt. # 62-1. Additionally, the finality or effectiveness of the Settlement shall not depend upon the Court awarding any particular fee award to Class Counsel. *See* SA, ¶ VI(C), Dkt. # 62-1. Therefore, from the standpoint of absent Class Members, the Settlement is fair, reasonable, and adequate.

### 4.    The Proposal Treats Class Members Equitably Relative to Each Other

The Settlement uses generally accepted methods for distributing relief to eligible claimants without the need for them to submit a claim form. Settlement checks to Class Members shall automatically be mailed directly by the Settlement Administrator to the Class Members without a need for a claim process. *See* SA, ¶ III(B)(3), Dkt #62-1. Indeed, because Class Members can be readily identified, claimants need not submit evidentiary support or documentation to prove membership or to receive a payment. *Id.* To the extent there are co-borrowers on each Loan identified by Defendant, only one payment will be made to the co-borrowers jointly, which promotes equitable distribution amongst Class Members. *Id.*

The Settlement Administrator will, *inter alia*: (1) disburse any remaining amounts of the Settlement Fund in accordance with the Settlement Agreement; and (2) respond to inquiries of Class Members regarding the terms of the Settlement and procedures for filing objections and requests for exclusion. *See* SA, ¶ V, Dkt # 62-1. If the Settlement Administrator identifies a Settlement check returned as undeliverable, the Settlement Administrator shall conduct a skip-trace or otherwise attempt to ascertain

1   current address information. *See* SA, ¶ V(A)(3), Dkt. # 62-1.  Furthermore, the Settlement Administrator

2   shall email Class Members who do not cash their Settlement checks after 90 days. SA, ¶ V(A)(21), Dkt.

3   # 62-1.

4          Although the Settlement calls for the payment of Incentive Awards to the Class Representatives,

5   such awards "are fairly typical in class action cases," and "do not, by themselves, create an impermissible

6   conflict between class members and their representatives." *E.g.*, *In re Online DVD- Rental Antitrust Litig.*,

7   779 F.3d 934, 943 (9th Cir. 2015). Here, the contemplated Incentive Awards are commensurate with

8   similar awards in other cases. *See, e.g.*, SA, ¶ III(B)(1), Dkt. # 62-1 (providing for a $5,000 Incentive

9   Award to each Plaintiff); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 942-43 (approving a $5,000

10  incentive payment to each class representative, and noting that the Ninth Circuit had approved an

11  "identical incentive fee" in the past).

12          **5.    The *Hanlon* Factors Support Final Approval**

13          Rule 23 overlaps with many of the *Hanlon* factors, which are: (1) the strength of the plaintiff's

14  case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining

15  class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery

16  completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of

17  a governmental participant; (8) the reaction of the class members to the proposed settlement; and (9)

18  whether the settlement is a product of collusion among the parties. *In re Bluetooth Headset Products Liab.*

19  *Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). Only factors (7) and (8) have the potential for changed

20  circumstances since the Court entered its Preliminary Approval Order. All other factors were being

21  previously addressed in Plaintiffs' prior argument in support of Preliminary Approval, and the analysis

22  above, in relation to the Rule 23(e)(2) factors, which are fully incorporated by reference. Factor (8) is

23  addressed in this Motion *supra*, and factor (7) is further detailed below.

24

25

### 6.    The Presence of a Government Participant

Pursuant to the Notice Plan, on February 6, 2023 and February 7, 2023, Rust Consulting caused CAFA Notice regarding the Settlement to be sent to the Attorneys General of all states, as well as the Attorney General of the United States. Stofferahn Decl. ¶ 5; *see also* 28 U.S.C. § 1715. The Parties have not received any objections from the CAFA notice recipients. Stofferahn Decl. ¶ 5.

## IV.    CONCLUSION

For the reasons set forth above, the Plaintiffs request that the Court enter an order granting final approval of the Settlement, and for such other relief as the Court deems just and appropriate under the circumstances.

Dated: June 21, 2023                    By:  /s/ Marc E. Dann

Marc E. Dann (pro hac vice)
DANNLAW
15000 Madison Avenue
Lakewood, Ohio 44107
(216) 373-0539 telephone
(216) 373-0536 facsimile
notices@dannlaw.com

Thomas A. Zimmerman, Jr. (pro hac vice)
ZIMMERMAN LAW OFFICES, P.C.
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020 telephone
(312) 440-4180 facsimile
tom@attorneyzim.com

Jeffrey A. Long
LAW OFFICES OF JEFFREY A. LONG
4248 Galewood St., Suite 18
Lake Oswego, OR 97035
(503) 374-9777
jeff@jefflonglaw.com

Counsel for Plaintiffs and the Settlement Class